KANSAS CENTRAL RAILWAY COMPANY v. JERRY FITZSIMMONS.

1. LIABILITY FOR INJURIES; *Relation of Master and Servant, not Implied.* When a railroad is being constructed, and is in the exclusive possession of and operated by a contractor for its construction, and the railroad company at the time the injuries complained of are committed has no control thereof, such company is not liable for the damages resulting from the operation of such railroad. In such case, the maxim *Respondeat superior* does not apply.

2. ———— *Instructions.* In an action to recover damages for personal injuries to F., a boy about twelve years of age, caused by a turn-table used in the operation of a railroad, which was neither inclosed, guarded, nor locked, and where such railroad is being constructed under a contract to equip and construct the same by a constructing corporation, organized under the laws of Pennsylvania with power to contract to *build, construct, maintain or manage any works,* public or private, and supply and furnish all needful materials, laborers, implements and instruments and fixtures of any and every kind whatsoever, and such railroad when partly finished, and while in the possession of and operated by the corporation contracting to construct the road, is used and controlled by the constructing corporation for carrying passengers and freight, *held,* that an instruction, to the effect, "that if the jury find that at the time of the injuries, the turn-table and the road were in the possession of and operated by the corporation, constructing and equipping the same for the purposes of construction only, the railroad company was not liable therefor, but if the said constructing corporation had possession of the road and was operating it for general purposes, the railroad company was not relieved from liability for the injuries," is erroneous, as liable to mislead the jury to the prejudice of the railroad company.

*Error from Leavenworth District Court.*

ACTION by *Fitzsimmons,* by his father as his next friend, to recover damages for personal injuries sustained. The

plaintiff had judgment at the November Term 1874 of the district court for three thousand dollars. The *Railway Company* brings the case here on error. The facts, and the instructions complained of, are set forth in the opinion.

*Robert Crozier*, for plaintiff in error.

*F. P. Fitzwilliam*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action by Jerry Fitzsimmons, by his next friend, to recover damages for personal injuries. On the 17th of August 1873, Fitzsimmons, then about twelve years of age, was so much injured in his right leg by a turntable that to save his life the leg had to be amputated below the knee. He sat upon the end of the table, with his legs hanging over. It was being run around by other boys about his own age, and when the rails on the table came in juxtaposition to those of the adjacent track, the limb was caught between them, and so crushed as to make amputation necessary. The table is situated on the Fort Leavenworth military reservation, from one-third to one-half of a mile north of the north line of Leavenworth, the intervening space being an open common, which is crossed by the Chicago & Southwestern Railway, and was the grazing-ground of many cows belonging to citizens of the town, among them the cow of the plaintiff's father, who was a laborer in very limited circumstances. About three o'clock on the afternoon of the day mentioned, (which was Sunday,) Fitzsimmons was sent by his father to look after the cow. Having found the cow, in company with five or six other boys he proceeded to the turn-table, and was injured as above stated. The turntable was not inclosed, guarded, or locked. The Kansas Central Railway Company was organized for the purpose of constructing a railroad from Leavenworth to the west line of the state, with sundry branches, (in all, about five hundred miles.) The defendant had made a contract with the Washington Improvement Company, a corporation organized un-

*Statement of case.*

der the laws of Pennsylvania, for the construction and equipment of its whole road, fifty-six miles of which had been completed and equipped at the time of the accident. There was conflict in the testimony as to which of the above companies was in possession of and operating so much of the railroad as was then built. On the part of the railway company, evidence was offered of an agreement between the Washington Improvement Company and the Kansas Central Railway Company for the former company to furnish the means and material and to construct and equip the whole of the Kansas Central railroad, and the charter of said company showing its power to make the contract. The testimony of the president of the Kansas Central Railway Company was to the effect, that but fifty-six miles of the road had been constructed; that the same had not been turned over to the railway company, but at the time of the injury complained of the said Improvement Company was in the possession of and operating said railroad. There was evidence introduced in behalf of the plaintiff in the court below tending to contradict this defense. On the trial the defendant railway company requested the court to instruct the jury as follows:

"If the jury find from the testimony that the Kansas Central railway was, at the time of the injury to the plaintiff, in fact in the possession of, and operated by the Washington Improvement Company, the plaintiff cannot recover in this action.

"If the jury find from the evidence that the Kansas Central Railway Company contracted with the Washington Improvement Company to construct and equip its railroad five hundred miles or more west from the city of Leavenworth, and that said Washington Improvement Company had constructed but fifty-six miles thereof, and had not turned the same over to the Kansas Central Railway Company, but remained in the possession of the same at the time of the injury complained of, the plaintiff cannot recover."

The court refused so to instruct the jury, but did instruct them as follows:

"The fact which is presented for our consideration is the alleged one, that at the time of the injury the turn-table in

question, not only was first constructed by this Washington Improvement Company, but had been from its construction up to that time, and still beyond that period, under the exclusive management and control of that corporation or company, and the defendant — the Kansas Central Railway Company — had nothing to do with it; and it is claimed by the defendant that if that be so, then the Washington Improvement Company is the one that should be responsible, if anybody, and not the defendant.

"With reference to this question, I instruct you as follows: The contract between the Washington Improvement Company and the defendant, read in evidence, will be regarded by the jury a valid contract, in so far as it authorizes the Improvement Company to construct and equip the railroad of the defendant, and in so far as it gives to the Improvement Company the right to use and manage the road for the purposes of completing the track; and so I say to you, if you find that the turn-table and the railroad, in so far as it had been constructed under the contract read in evidence had not been turned over to the defendant, and had been used by the Improvement Company from the time of its construction up to the time of the injury in question, and this only for the purpose of prosecuting the work contracted to be done by it, then I instruct you the plaintiff cannot recover, and it will be the duty of the jury to find a verdict in favor of the defendant.

"But I say to you, that this contract is not to be regarded as valid for the purpose of conferring on the Improvement Company the right to use the road for general purposes — for the purposes of general traffic — and if you find therefore, that at the time of the injury the turn-table and the road so far as it was constructed were being operated and used for the purpose of general traffic — as railroads are generally used and operated — then I say that the defendant cannot relieve itself from liability by the fact that the immediate running of the trains and the operation of the road was confided to others, who may have supposed that they were employed and paid by the Improvement Company. It cannot shield itself from responsibility in this case behind the contract in question."

The proper exceptions were taken, and the case is here for review. The better authority is, that when a railroad is being constructed, and is in the exclusive possession of and operated

**1. Liability, in case of independent companies.** by the contractor for its construction, and the railroad company at the time of the injuries being committed thereon has no control thereof, such company is not liable for the damages resulting from the injuries committed by the contractor in operating the road. The relation of master and servant does not exist between an employer and an independent contractor. There are exceptions, as usually is the case, to this rule, but the later decisions, as well as reason, support the general principle stated. *Knight v. Fox,* 5 Exch. R. 721; *Rudie v. London & Northwestern Rly. Co.,* 4 Exch. R. 244; *Ellis v. Sheffield Gas Consumers Co.,* 2 El. & Bl. 767; *Kelly v. Mayor of N. Y.,* 11 N. Y. 432; *Lockwood v. New York,* 2 Hilt. 66; *Blackwood v. Wiswall,* 24 Barb. 355; *Carman v. Steubenville & Indiana Rld. Co.,* 4 Ohio St. 399; *Boswell v. Laird,* 8 Cal. 466; *Steel v. S. E. Rly.,* 16 C. B. 550; *Meyer v. Midland Pacific Rld. Co.,* 2 Neb. 319; *Peachey v. Rowland,* 16 Eng. L. & E. Rep. 442.

This general doctrine the court below substantially recognized in its charge to the jury, but made a distinction as to the liability of the railway company in the use for which the contractor operated the road. The liability of the railway company is attempted to be made to depend on the character of the use of the road, not the character or manner of the possession of the same by the contractor. In effect, the court instructed the jury, that if the improvement company had charge of the railroad, and was operating it for the purposes of construction *only,* the railway company was not liable; but if the contracting company had *like* possession and *like* control, and was operating the road for the purpose of general traffic, then the railway company was liable. The instruction thus given was too broad, and not sufficiently limited to be applicable to the case at bar. The real defense to the action was, that the railroad was being constructed by the Washington Improvement Company, was in its possession and under its control, and operated by it; that it had not yet been turned over to the railway company, and that the railway company had nothing to do with its operation or construction, or the

employment of its hands.  If the improvement company held possession of the road, and engaged in general traffic against the objections of the railway company, under the charge, the railway company would be liable.  If the contracting company had failed to properly equip the road, or had built defective bridges, and the railway company refused to accept the same, this charge of the court would hold the railway company liable for all damages caused thereby, if in defiance of the railway company's orders and authority the contracting company carried freight and passengers over the road.  Under its charter, the railway company had full authority from the state to construct its road; it had the undoubted right to employ individuals or a corporation to build and equip the same.  During its construction it was properly in the charge of and under the control of the corporation having the contract for its construction, and thus far, it is conceded, the railway company is not liable for the acts of the contracting party.  But because the improvement company engaged for a time in general traffic over the road, the court by its charge says the liability of the railway company is settled.  The charge does not base this liability upon the improvement company being the lessee of the road, nor upon any contract by which the road is to be operated with the consent or for the benefit of the railway company.  Nor can it be claimed from the instructions that the railway company had made any contract in violation of its charter, or to avoid its responsibility.  It is conceded that the improvement company had authority under its incorporation to construct and equip the road; and to hold, that while in the possession of the road and its appurtenances, the railway company should be responsible for its wrongful acts or omissions, because said improvement company ran trains and carried passengers and freight, would be deciding the law contrary to that given in the first part of the charge, and affirming in its broadest sense the principle that the employer is responsible for all acts and omissions of the contractor, the same as those of a servant.  Such is not

2. When relation of master and servant does not exist.

the law. The principle by which all these cases are governed is the general one, that a person who receives an injury from another must proceed against the party by whom the injury is inflicted. In the case of master and servant, the master is liable for the negligent acts of the servant, on the ground that he has the power of selecting him; but in order to make one person liable for an act which another person has done, the latter must be the servant of the party sought to be made liable. The maxim of the law is, *respondeat superior;* and in this case, the railway company, on the facts presented by the defense, and on which the defendant in the court below asked that the instructions quoted above be given, does not stand in the relation of *superior* to the improvement company. We are unwilling to follow the decisions cited by the counsel for the defendant in this court, so far as they conflict with these principles. As to the decisions cited by the same counsel, that if a railway company leases its road to another, or places its road in the hands of an irresponsible individual, or a worthless corporation, it cannot thereby avoid its liability, we need only say, that in this case they are not applicable. The instructions are not restricted by any such qualifications. The Kansas Central Railway Company had not leased its road to be operated for general traffic; nor is the charge based upon the theory that the improvement company was operating the road in its own name for the use and benefit of the railway company, merely to relieve the latter from responsibility. The fact that the improvement company had no authority to operate a railroad in Kansas, as claimed by counsel for defendant in error, does not on the facts presented change the law in this case. If the improvement company, in carrying passengers and freight, was violating its own charter, as well as committing acts not authorized by the contract existing between it and the railway corporation, the reasons are still stronger in favor of holding the railway company not liable for such unlawful acts. That such improvement company could not interpose the violation of its own charter to shield

it from responsibility, is fully discussed and decided in *Bissell v. Michigan Southern & Northern Rld. Cos.*, 22 N. Y. 258. Considering the instructions refused, and the charge given, we think the court erred, and that it may have misled the jury.

We do not wish to be understood that upon the evidence produced, the jury should have found that the Washington Improvement Company was in fact operating the railroad; nor that the Kansas Central Railway Company is not liable in the case. The question, as to which company was operating the road at the time of the injuries complained of, is a question of fact to be decided upon the evidence, by the jury. But a party to an action has the right to have his case submitted to the jury under proper instructions, and in this case the plaintiff in error has been denied this legal right.

Other questions are presented in the brief of the counsel, but as a new trial is to be had, and as these questions may not arise again, we need not comment thereon.

The judgment must be reversed, and a new trial ordered.

VALENTINE, J., concurring.

BREWER, J., *dissenting:* I am unable to concur with my brethren in the conclusions they have reached in this case, and will state very briefly the reasons of my dissent. And first, as I understand it, there is nothing in the record tending to show that the railway company was endeavoring to get possession of its road, or that the construction company for any reason was refusing to surrender the possession, or that the railway company was refusing to receive possession on account of any failure to complete the construction and equipment of the road to Holton, (then and since the only portion of the road constructed,) or that an abundance of time had not elapsed since the completion of that portion of the road for examination and surrender. The instruction certainly contemplates none of these things. Neither was there any testimony tending to show a lease, or anything of that nature. All I understand the instruction to say is, that a

4—18 KAS.

railway corporation receiving a franchise from this state, with the high and peculiar privileges attaching to corporations, incorporated to discharge a public duty, as well as to subserve a private benefit, cannot shift upon others the duty and responsibility of a *personal exercise* of the corporate powers granted, except in the cases and under the conditions specified in the statute. It may contract for the construction of its road. It may lease the road, when constructed, to another corporation whose road with its own will make a continuous line. (Laws of 1870, ch. 92, §§ 2 and 3.) But it cannot avoid responsibility by simply permitting another party, neither contractor nor lessee, to assume charge of the immediate running of the road. I think the judgment should be affirmed.

Judgment reversed.